120 N.J. Super. 493 (1972)
295 A.2d 19
SALESIAN SOCIETY, PLAINTIFF
v.
FORMIGLI CORPORATION, EDWARD REIHL COMPANY, INC., AND WILLIAM REIHL AND EILEEN REIHL WOJTECKI, INDIVIDUALLY AS THE LAST OFFICERS AND DIRECTORS OF EDWARD REIHL COMPANY, INC., A DISSOLVED CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 27, 1972.
*495 Mr. Prospera DeBona and Mr. Robert P. Grabowski for plaintiff (Messrs. Dittmar, DeBona, Goldberg, Johnson, Byrne & Donnelly, attorneys).
Mr. John W. Reinman, for defendant Formigli Corporation (Messrs. Bennett & Bennett, attorneys).
Mr. Edward R. Schwartz and Mr. Frank R. Cinquina for defendants Edward Reihl Company, Inc. and Eileen Reihl Wojtecki (Messrs. Schwartz and Andolino, attorneys).
BOTTER, J.S.C.
Defendants and plaintiff have moved for summary judgment to determine whether this action is barred by N.J.S.A. 2A:14-1.1; L. 1967, c. 59. Under this statute no action may be brought against contractors, architects and the like grounded in contract, tort or otherwise, to recover damages for deficiencies or defects in the design, planning, supervision, or construction of an improvement to real property after ten years from the date when the services were rendered or the construction performed. On July 19, 1972, our Supreme Court upheld the constitutionality of this statute. Rosenberg v. North Bergen Tp., 61 N.J. 190 (1972).
Plaintiff, Salesian Society, is a religious corporation. In 1956 or 1957 plaintiff contracted with Edward Reihl Co., Inc. (Reihl) for the construction of a large building in Newton, New Jersey, at the site of Don Bosco College. Construction commenced in July 1957 and the building was completed and occupied on May 3, 1958.
Plaintiff asserts that the Reihl company was paid $519,000 for the construction work, of which approximately $108,000 was paid to defendant Formigli Corporation, a subcontractor, for its role in designing, fabricating and installing concrete beams supporting the walls and roof of the structure. If the case were tried, Formigli would dispute that it designed the beams, and both Formigli and Reihl would contend that all construction was done in accordance with plans and specifications *496 submitted by plaintiff. However, for the purpose of this motion, all facts alleged by plaintiff were accepted as true.
Plaintiff asserts that in early 1969 water leaks began to appear in the building. In April 1969 plaintiff contracted for the repair of leaks around window frames in the dormitory section at a cost of $59,000. Plaintiff asserts that in the course of that repair work, in April and May 1969, it was discovered that the water leaks were related to serious cracks in the concrete beams supporting the building. Plaintiff thereafter engaged an engineer and architect to study the problem. In February 1970 plaintiff received a report that the structure was unsound and dangerous. A second study was commissioned, and a similar report was received in June 1970. Accordingly, the building was shut down and the September 1970 class of students was transferred to a location in Massachusetts. Thereafter, on May 27, 1971 this action was commenced, approximately 13 years after the building had been completed and occupied and four years after N.J.S.A. 2A:14-1.1 became effective. By then, specifically in 1969, the Reihl corporation had been dissolved.
Defendants contend that this action is expressly proscribed by N.J.S.A. 2A:14-1.1, which is as follows:
No action whether in contract, in tort, or otherwise to recover damages for any deficiency in the design, planning, supervision or construction of an improvement to real property, or for any injury to property, real or personal, or for an injury to the person, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property, more than 10 years after the performance or furnishing or such services and construction. This limitation shall not apply to any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought.
*497 Plaintiff has attacked the constitutionality of the statute and has asserted also that, in any event, it does not apply to this action because (a) the statute, by the terms of its second sentence, does "not apply" to an owner in actual possession and control; (b) this statute should be interpreted to apply prospectively only, to construction or services performed after its effective date, namely, May 18, 1967; (c) the defects were unknown and undiscoverable prior to the spring of 1969 and the "discovery rule" should except plaintiff from the operation of the statute; and (d) the claim is grounded in breach of warranty and strict liability in tort, and is therefore not affected by the statute.
The constitutional infirmities charged here by plaintiff are similar to those urged in Rosenberg v. North Bergen Tp., supra. In that case (although not raised before me in the trial court on the motion to dismiss) a broad constitutional attack was raised, namely, that the law was arbitrary, violated equal protection and due process rights, and created an immunity for a special class in violation of fundamental law. It was argued that it contravenes traditional notions of fair play and the broad public policy principles underlying the "discovery rule" to cut off a cause of action before it is discovered.
As stated above, the Supreme Court upheld the constitutionality of the statute. While acknowledging the desirablity of affording a remedy in certain cases by extending the period of limitations through the "discovery" rule, the court also recognized the right of the Legislature to set a terminal date for claims that might otherwise threaten with liability a given class of persons for an unlimited period of time. The court held that the statute is not a statute of limitations which fixes a time period for the commencement of an action after it accrues. Instead, the statute prevents "from ever arising" a cause of action against members of the protected class at a given point of time. The court said:
"The injured party has literally no cause of action. The harm that has been done is damnum absque injuria  a wrong for which the *498 law affords no redress. The function of the statute is thus rather to define substantive rights than to alter or modify a remedy. The Legislature is entirely at liberty to enact new laws or abolish old ones as long as no vested right is disturbed."
For these reasons I must reject also, the one constitutional attack made here which was not presented in Rosenberg, namely, that Art. IV, Sec. VII, § 5 of the New Jersey Constitution is violated because this statute is, in effect, an amendment to the statute of limitations embraced in N.J.S.A. 2A:14-1 without that law being fully set forth in the Act under review.
Two of plaintiff's contentions in this case require an interpretation of the statute. The first contention is that plaintiff's action is excepted from the operation of the statute because of the last sentence which reads:
This limitation shall not apply to any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe condition of such improvement constitutes the proximate cause of the injury or damage for which the action is brought.
The phrase, "this limitation shall not apply to" an owner or tenant in possession, is ambiguous. In Rosenberg it was argued that this phrase makes the statute void for vagueness, since it refers either to claims of an owner in possession or claims against an owner in possession. In deciding which was intended by the Legislature, one might seek an interpretation that avoids a contraction of common law rights, since the statute has a substantive effect. However, this canon of construction is of no help, because in either case substantive rights will be cut off, either the rights of owners in possession to sue architects. designers and contractors, or the rights of members of the public to sue owners or tenants in possession for injuries due to deficiencies in design, construction or supervision performed by them more than ten years before an action is brought. In my opinion, the Legislature, by this phrase, intended to preserve causes of action *499 against "any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time" injury or damage is caused by defective design or construction. This is the construction given to the statute in Gilliam v. Admiral Corporation, 111 N.J. Super. 370, 374 (Law Div. 1970). See also, Wiggins v. Proctor & Schwartz, Inc., 330 F. Supp. 350, 352 (D.C. Va. 1971).
In the course of passage the words, "in contract, in tort, or otherwise," were added to a previous bill, Senate 252 (1966), which did not become law, although the language remained the same in the law enacted in 1967. By this phrase the Legislature expressed a clear intent to deprive an owner of contract claims against architects and contractors, after ten years. The phrase must have been aimed primarily at owners, because it is they who would have a contract claim for deficiencies in design or construction. A third party, such as an invitee injured by a defect in the premises, is likely to have a tort claim against an owner or tenant in possession and control, but not a contract claim against an architect or builder. It makes little sense to take a contract claim away from an owner in the first sentence of the act and then restore it to him, if he is in possession and control, by the second sentence. Clearly, the intent was to deprive the owner in possession and control from asserting the ten-year period as a defense to claims by third parties. This conclusion is bolstered by the statutory provision precluding claims for contribution or indemnity. It is the third party who has a claim against an owner, but the owner's claim for indemnity or contribution, as well as his direct contract or tort claim against an architect or builder, are barred.
Some 30 states have adopted similar statutes between 1964 and 1969, and others since. See Comment, "Limitation of Action Statutes for Architects and Builders  Blueprint for Non-action," 18 Catholic U.L. Rev. 361 (1969). In some of these states statutes were adopted using the phrase, "this limitation shall not apply to a person in actual possession and control as owner, tenant or otherwise * * *." Miss. *500 Code Ann. § 720.5 (Supp. 1968); N.H. Rev. Stat. Ann. § 508:4-b (1968); N.C. Gen. Stat. § 1-50(5); Ohio Rev. Code Ann. § 2305.13.1 (Supp. 1968); Utah Code Ann. § 78-12-25.5 (Supp. 1967); Wisc. Stat. Ann. § 893.155 (1966). Most of the states preserve claims against owners or tenants in possession by clearer language. The phrase most commonly used is, "this limitation shall not be asserted by way of defense by any person in actual possession and control of the improvement as owner, tenant or otherwise at the time a deficiency constitutes the proximate cause of the injury or death for which it is proposed to bring an action." Alaska Stat. § 09.10.055 (Supp. 1968); Cal. Civ. Pro. Code § 337.1 (West Supp. 1968); Ga. Code Ann. §§ 3-1006 to 3-1009 (Supp. 1968); Idaho Code Ann. § 5-241 (Supp. 1967); Ind. Ann. Stat. §§ 2-639 to 2-642, IC 1971, XX-X-XX-X to XX-X-XX-X (Supp. 1967); Ky. Rev. Stat. § 413.135 (Supp. 1968); N.D. Cent. Code § 28-01-44 (Supp. 1967); Okla. Stat. Ann., Title 12, § 109 (Supp. 1968); Pa. Stat. Ann. Title 12, § 65.1 (Supp. 1969); S.D. Laws Ann. § 15-2-9 (1966); Wash. Rev. Code Ann. § 4.16.300-4.16.320 (Supp. 1968). Similar language, namely, "this limitation shall not be applied in favor of any person in actual possession and control as owner, tenant or otherwise," was used in the Minnesota statute. Minn. Stat. Ann. § 541.051 (Supp. 1968). Finally, perhaps the clearest expression is used in the Nevada statute, namely "where an action * * * is brought against a person in actual possession or control as owner, tenant or otherwise * * * the limitation * * * shall not be a defense for such person." Nev. Rev. Stat. § 11.205 (1967). Similar language, clearly indicating the limitation "shall not apply to actions against" an owner or tenant in actual possession, is found in Mich. Comp. Laws Ann. § 600.5839 (1968) and Va. Code Ann. § 8-24.2 (Supp. 1966).
That the intent was to preserve causes of actions against owners and tenants in possession and control was made clear in hearings on proposed legislation for the District of Columbia. "Hearing 7 on H.R. 6527, H.R. 6678 and H.R. *501 11544 before Subcomm. No. 1 of the House Comm. on the District of Columbia," 90th Cong., 1st Sess. 5, 11, 24, 29 (1967). These views were summarized in Comment, 18 Catholic U.L. Rev., supra, at 384, as follows:
3. The injured party retains his remedy against the owner after the statutory period. With the passage of time, the probability increases that improper maintenance, rather than faulty design or construction, is the proximate cause of injury. Thus, some reasonable time limitation for suit is a fair compromise, and statistical data show that 84.3 percent of all claims against architects and builders would be brought within four years.
Exceptions to this pattern of legislation are the Florida and Louisiana statutes. In Louisiana the limitation applies to every claim, "whether brought by the owner or by any other person." La. Rev. Stat. Ann. § 9:2772 (1965). In Florida, an anomalous statute goes the other way by providing, "Nothing in this act shall affect the limitation of actions by an owner or tenant in possession, but shall apply only to third parties."
In my opinion the legislative intent was to insulate contractors, architects, planners and designers from all claims, whether in tort or contract or by way of contribution or indemnity, by owners, tenants or third persons after ten years. What the Legislature intended to preserve was the right to make a claim against a person "in actual possession or control as owner, tenant or otherwise" at the time of the injury. The net effect is that potential liability for dangerous conditions of premises is left on the owner or other person in possession if injury is caused by circumstances that normally give rise to a cause of action. See Handelman v. Cox, 39 N.J. 95, 106, 111 (1963); Krug v. Wanner, 28 N.J. 174 (1958); Brody v. Albert Lifson & Sons, 17 N.J. 383 (1955); Zentz v. Toop, 92 N.J. Super. 105, 111 (App. Div. 1966), aff'd 50 N.J. 250 (1967); Restatement, Torts 2d, § 343 (1965). The legislative disposition was to exclude from liability persons, such as architects and contractors, who have been long out of possession of the property and long *502 without the right or duty to make inspections and repairs of conditions that may be discovered during the ten-year period.
Plaintiff also contends that the statute should be given a prospective application only as to construction or services performed after its effective date, May 18, 1967. Normally, a statute having a substantive effect is given a prospective application unless a contrary legislative intent is clearly expressed. Nickell v. Gall, 49 N.J. 186, 189 (1967); Kopczynski v. Camden County, 2 N.J. 419, 424 (1949). Here, the Legislature provided that no action "shall be brought * * * more than 10 years after the performance or furnishing of such services and construction." Clearly, the statute should be read prospectively to apply only to actions brought after its effective date. A problem may be presented by actions for damage discovered a short time before the ten-year period has run, but which are not brought until shortly after that time has passed. Some states have provided a grace period to meet that problem. For example, where the injury or damage has occurred in the last year or two of the period, the injured party is still allowed to sue within one or two years after the date of injury. The Alaska, California, Georgia, Indiana, Kentucky, North Dakota, South Dakota, Minnesota and Nevada statutes, supra, all contain provisions along these lines. The present case, however, is not one in which the damage was discovered just before the ten year period elapsed, and this problem, therefore, need not be confronted.
To say that the Legislature meant to apply the act only to construction completed after its effective date, May 18, 1967, would keep open for ten years, for example, an action for damage due to defective construction completed on or after May 18, 1967. This means that the statute would bar an action for the first time on May 18, 1977. That bar would apply only to construction completed on or after May 18, 1967. Such an interpretation would mean that claims for damage against contractors and architects of construction *503 completed before May 18, 1967 would be left open for an unlimited period of time, except as governed by existing statutes of limitations. Obviously, such an interpretation would have prevented the dismissals of the actions in Rosenberg v. North Bergen Tp., supra, and Gilliam v. Admiral Corporation, supra. In my opinion the Legislature did not intend the statute to bar only actions which are filed after May 17, 1977. The statute does apply prospectively, however, to all actions commenced after its effective date in 1967, including this action. In this sense the statute has prevented a cause of action from arising for damage discovered long after the alleged breach of contract or tort was committed, in 1957 or 1958, at the time of construction. By thus limiting the "discovery" rules which our courts have developed since then, beginning with Fernandi v. Strully, 35 N.J. 434 (1961), plaintiff is actually in no worse position than when the work was contracted and completed. In fact, at that time the "completed and accepted" rule might also have applied as a bar to this action. See Totten v. Gruzen, 52 N.J. 202 (1968). There is no claim here that any express contract provision prevents the rights of plaintiff from being cut off by statutes of limitation or other rule of law.
Accordingly, the motions of defendants are granted; the motion of plaintiff is denied, and the action is dismissed.